UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DANIEL A. OSWALD, #26190-57,

        Petitioner,

v.                                                      ACTION NO. 2:20cv367

J. ANDREWS, Warden,

        Respondent.

### UNITED STATES MAGISTRATE JUDGE'S
### REPORT AND RECOMMENDATION

This matter is before the Court on the *pro se* petition filed pursuant to 28 U.S.C. § 2241 by petitioner Daniel A. Oswald ("Oswald"), a federal prisoner convicted and sentenced in the Eastern District of Virginia, and previously housed in the Federal Correctional Center in Petersburg, Virginia, and respondent's motion to dismiss the petition with prejudice. ECF Nos. 1, 9. The matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72 of the Local Rules of the United States District Court for the Eastern District of Virginia.

The undersigned **RECOMMENDS** that respondent's motion to dismiss as converted into a motion for summary judgment, ECF No. 9, be **GRANTED**, and the petition for a writ of habeas corpus, ECF No. 1, be **DISMISSED WITH PREJUDICE**.

                I.         **STATEMENT OF THE CASE**

At the time he filed his petition, Oswald was housed in the Federal Correctional Institution in Petersburg, Virginia ("FCI Petersburg"). ECF No. 1, at 1. Oswald is currently incarcerated at the United States Penitentiary ("USP") in Yazoo City, Mississippi, with a projected release date

of September 4, 2025. ECF No. 10-1, at 2.[1] Oswald alleges he was denied due process when, following a disciplinary hearing held at FCI Petersburg on March 19, 2020, he did not receive the written statement of the disciplinary hearing officer ("DHO"). *Id.* at 2, 10–11; ECF No. 10 at 3. He further asserts that the punishment he received for violating the Bureau of Prisons ("BOP") disciplinary code constitutes cruel and unusual punishment. ECF No. 1, at 6, 11.

### A. Oswald's disciplinary hearing process

On January 22, 2020, Oswald was issued an incident report charging him with violating BOP disciplinary code 110 by refusing to take a drug or alcohol test. ECF No. 10-2, at 2. The incident report states,

> On Wednesday, January 22, 20[20] while conducting random urinalysis test in the compound office Inmate OSWALD, DANIEL, #26190-057 was call[ed] to the compound office and put on the two[-]hour time frame at 0547 hrs to provide a sample. Inmate Oswald was given a cup of water when he first was put on the time limit. At 0715 hrs inmate Oswald was given another half cu[p of] water. At 0750 hrs inmate Oswald still hadn't provided a sample.

*Id.*[2] A copy of the report was provided to Oswald the same day. *Id.*

On January 28, 2020, Oswald appeared before the Unit Discipline Committee ("UDC"). *Id.* at 3. Oswald made the following statement,

> I had stomach cramps and had to go to the bathroom and crap. The officer would not let me and I could not hold it and crapped on myself. I went to clean up and told him that I could come back but he said never mind.

*Id.*

---

[1] The Clerk is **DIRECTED** to update the docket sheet to reflect Oswald's transfer to USP Yazoo City, U.S. Penitentiary, P.O. Box 5000, Yazoo City, MS 39194.

[2] The incident report indicates the violation occurred on January 22, 2020, at 7:50. ECF No. 10-2 at 2. The description of the incident appears to include a typographical error referencing January 22, 2019. *Id.*

The same day, Oswald received a notice of disciplinary hearing before the DHO. *Id.* at 13. Oswald was advised of his rights at the disciplinary hearing. *Id.* at 11. He indicated that he did not wish to have a staff representative at the hearing, and did not wish to call any witnesses. *Id.* at 13.

On March 19, 2020, Oswald appeared before the DHO. ECF No. 1, at 2; ECF No. 10-2, at 15. Oswald waived the right to have a staff representative, waived the right to present witnesses, acknowledged receipt of a copy of the incident report, and indicated he understood his rights before the DHO. ECF No. 10-2, at 15–16. The DHO report indicates Oswald admitted he was guilty of the offense and notes the following, "Inmate Oswald made this initial statement: 'I [had] to defecate, so I could not pee.'" *Id.* at 15. The DHO found Oswald guilty of refusing to provide a urine sample, a violation of code 110. *Id.* at 16. His punishment for this violation was a loss of 41 days of good conduct time ("GCT") and a loss of 4 months of commissary privileges. *Id.* at 17, 22. The DHO provided the following reason for imposing the sanctions,

> The action/behavior on the part of any inmate to refuse to provide a urine sample, or take part in a drug screening, to staff when requested creates an inability of staff to implement the established drug screening policy, which provide as [sic] orderly operation where both inmate and staff can live and work in a safe environment. The sanctions imposed by the DHO were taken to let the inmate know that he and he alone, will be held responsible of [sic] his actions/behavior at all times.
>
> The loss of GCT sanction was imposed to comply with mandatory sanctioning guidelines for PLRA inmates. The other sanctions imposed by the DHO were taken as punishment for your misconduct.

*Id.* at 17.

The warden has the discretion to encumber funds and limit services for inmates charged with prohibited acts. ECF No. 10-1 at 3. The BOP Program Statement 4500.12, Trust Fund/Deposit Fund Manual, Chapter 2, provides:

3

> The management of inmate funds and the operation of Trust Fund are designed primarily for the benefit of inmates. However, the use of Trust Fund services is a privilege which the Warden or an authorized representative, may limit or deny any inmate. Similarly, the maximum amount that may be expended by an inmate for Trust Fund items or services is a controllable privilege.

ECF No. 10-2, at 19.

Due to Oswald's violation, on March 26, 2020, F. Vaughan, SIS TECH, sent a memo to respondent, Warden Andrews, requesting that Oswald's inmate funds "be encumbered and placed on administrative hold, to include disallowance of telephone fund transfers, disallowance of TRU-Units transfers, disallow access to manage funds, encumbrance of the inmate[']s monetary account and future income, and a monthly spending limit of $6.00 is put into effect." *Id.* at 21; *see also* ECF No. 1, at 11 ("One month after this punishment was handed down by the disciplinary officer, the Warden (J. Andrews) [e]nlarged the punishment to be in effect until September 2025. Additionally[,] the Warden has frozen ALL of the Mo[v]ant[']s funds.").

The DHO signed the report on May 29, 2020. ECF No. 10-2, at 17. According to the notation on the report, it was delivered to Oswald at 9:49 a.m. on July 14, 2020, after Oswald filed his petition in this case. *See* ECF No. 1; ECF No. 10-2, at 17. The DHO report further indicates that, at the time the report was delivered to Oswald, he was "advised of his right to appeal this action within 20 calendar days under the Administrative Remedy Procedure." ECF No. 10-2, at 17. According to the petition and respondent's records, Oswald has not appealed the DHO's findings through the BOP's Administrative Remedy Procedures. ECF No. 1, at 2; ECF No. 10-2.

4

### B. Oswald's federal petition and conversion of respondent's motion to dismiss to a motion for summary judgment

On July 10, 2020, Oswald filed a section 2241 petition for a writ of habeas corpus challenging the failure of the BOP to timely provide him a copy of the DHO report, and asserting the sanctions imposed by the DHO and the warden constitute cruel and unusual punishment. ECF No. 1, at 2–3, 6, 11. Oswald seeks to have the sanctions lifted, including reinstatement of his GCT. *Id.* at 11.

Warden J. Andrews ("respondent") filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6), with a memorandum in support and notice to Oswald. ECF Nos. 9–11. Respondent's first exhibit included a declaration from Latisha Allen, a legal assistant at FCI Petersburg, with attachments in support. ECF No. 10-1. The attachments include the incident report, chain of custody forms, a notice of inmate rights at the discipline hearing, a notice of hearing before the DHO, the DHO report, and memoranda from respondent regarding trust fund services and encumbrance of inmate funds. ECF No. 10-2.

The Court may only consider the Allen declaration and attachments without converting to a motion for summary judgment if the documents are "integral to and explicitly relied on in the complaint." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (quotation and citation omitted); *see* Fed. R. Civ. P. 12(d). Courts in this circuit have generally found that documents provided by the respondent that were not attached to the petition, such as a delayed DHO report that was not available when the petition was filed, are outside the pleadings and not appropriately considered on a motion to dismiss. *Robinson v. Andrews*, No. 2:20cv163, 2020 WL 6389842, at *1 (E.D. Va. Sept. 28, 2020) (collecting cases), *report and recommendation adopted by*, 2020 WL 6386971 (E.D. Va. Oct. 30, 2020). As it is necessary to consider these

documents, the Court converted the motion to dismiss to a motion for summary judgment and provided notice to the parties pursuant to Rule 12(d)[3] on March 5, 2021.[4]

## II. ANALYSIS

### A. Exhaustion

Generally, federal prisoners must exhaust their administrative remedies prior to filing federal habeas petitions. *McClung v. Shearin*, 90 F. App'x 444, 445 (4th Cir. 2004); *see also Timms v. Johns*, 627 F.3d 525, 530–31 (4th Cir. 2010). Administrative exhaustion "protects 'administrative agency authority,'" ensuring that agencies have an opportunity to correct mistakes and discouraging disregard of agency procedures. *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Additionally, because "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court," exhaustion promotes judicial efficiency. *Id.*

The exhaustion requirement in section 2241 is judicially imposed, and "even when the defense has been preserved and asserted by the respondent throughout the proceeding, a court may skip over the exhaustion issue if it is easier to deny (not grant, of course, but deny) the petition on the merits without reaching the exhaustion question." *Santiago-Lugo v. Warden*, 785 F.3d 467, 475 (11th Cir. 2015) (citing *Granberry v. Greer*, 481 U.S. 129, 131 (1987) ("[T]here are some

---

[3] Fed. R. Civ. P. 12(d) provides, "[i]f, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

[4] The order entered March 5, 2021, was originally sent to Oswald at FCI Petersburg. ECF No. 12. The order was sent to Oswald at the United States Penitentiary at Yazoo City, Mississippi, on March 9, 2021.

6

cases in which it is appropriate for an appellate court to address the merits of a habeas corpus petition notwithstanding the lack of complete exhaustion.")).

Oswald now has the report giving him notice of his right to appeal within 20 days. According to respondent, Oswald did not submit an appeal during that time period, and has failed to exhaust his administrative remedies. Oswald asserts that he did not exhaust administrative remedies because "DHO refused to give me DHO Report now four months past due. I cannot file an appeal without the DHO Report." ECF No. 1, at 2. Due to Oswald's eventual receipt of the DHO report and notice of right to appeal, his due process claim lacks merit, and the Court recommends addressing and dismissing the petition on the merits.

**B.     Due Process – delayed receipt of DHO report**

Prisoners retain rights under, and may claim the protections of, the Due Process Clause in disciplinary proceedings. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prisoners have a liberty interest in GCT, and when those credits are taken away, a prisoner is entitled to those procedures which are appropriate under the circumstances and required by the Due Process Clause to ensure that the credits were not taken away arbitrarily. *Id.* at 557–58. Specifically, the due process rights that prisoners possess when a protected liberty interest is at stake are:  (1) written notice of the charges against them at least 24 hours before their hearing; (2) the opportunity to call witnesses and present documentary evidence in their defense when doing so would not be unduly hazardous to institutional safety or correctional goals; and (3) a written statement of the evidence relied on and the reasons for the disciplinary action taken. *Id.* at 563–66.

A delay in receiving a written statement of the evidence relied on that does not have a prejudicial effect on the prisoner's administrative appeal, does not provide a basis for habeas relief

7

on due process grounds. *Griffin v. Ebbert*, 640 F. App'x 181, 184 (3d Cir. 2016) (finding no due process violation when an inmate received the DHO's report eighteen months after his hearing "because [the inmate] had not demonstrated that he suffered any prejudice as a result of the eighteen-month delay, [and] he had received the process he was due under *Wolff*"); *Staples v. Chester*, 370 F. App'x 925, 930 (10th Cir. 2010) (finding the approximate eight-month delay in providing petitioner with a copy of the DHO report did not prejudice his ability to bring an administrative appeal); *Shahan v. Ormond*, No. 3:18cv200, 2018 WL 6681210, at *8 (E.D. Va. Dec. 19, 2018) (finding petitioner failed to demonstrate that he suffered any prejudice from over eight-month delay in receiving the DHO Report), *aff'd*, 778 F. App'x 217 (4th Cir. 2019); *cf. Consolidation Coal Co. v. Borda*, 171 F.3d 175, 183 (4th Cir. 1999) (explaining that "[i]t is not the mere fact of the government's delay that violates due process, but rather the prejudice resulting from such delay," where a 16-year delay by the government to notify an employer of potential liability was held to be a violation of due process because there was prejudice shown).

When a prisoner files a petition for writ of habeas corpus due to the prison's delay in providing a written statement, but the due process violation is subsequently remedied by providing the prisoner with a written statement and allowing him to appeal, then there is no prejudicial effect on the prisoner, and his habeas petition should be dismissed. *Deroo v. Holinka*, 373 F. App'x 617, 617–19 (7th Cir. 2010); *see also Crawley v. Wilson*, No. 2:11cv542, 2012 WL 2505118, at *5 (E.D. Va. May 16, 2012) (holding that, where a prisoner's DHO report was delayed but he was still able to appeal the DHO's decision, there was no due process violation because there was no prejudice resulting from the delay in receiving his report) (citing *Consolidation Coal Co.*, 171 F.3d at 183). This Court in *Shahan v. Ormond*, explained that even if a prisoner successfully

8

challenged a loss of GCT in an appeal, the delay in receiving the DHO report "would not have prevented him from receiving the benefit of a successful appeal" because the revocation of GCT impacts the prisoner's future release date. 2018 WL 6681210, at *8.

Oswald does not dispute that the first two components of due process in *Wolff*—notice of charges and opportunity to present evidence—were satisfied. *See* ECF No. 1. Oswald was given written notice of the charges against him well before his hearing before the DHO, and he was given an opportunity to call witnesses and present evidence. ECF No. 10-2, at 2, 13, 15–16. Oswald challenges only the third due process right addressed in *Wolff*, asserting his due process rights were violated as a result of the BOP's delay in providing him the DHO report. ECF No. 1, at 2–3, 6, 11.

The respondent contends that the grounds for Oswald's petition are moot due to his receipt of the DHO report, and that he has not shown that he was prejudiced by the delay and therefore cannot claim that his due process rights were violated. ECF No. 10, at 7–8.

Although Oswald's right to appeal was delayed due to the respondent's failure to provide him the DHO report for approximately four months, providing the report to Oswald and allowing him to appeal the decision remedied the situation. The law does not regard such a delay as a due process violation if the prisoner is not prejudiced, and the delay does not provide a basis for the habeas relief sought. *See Consolidation Coal Co.*, 171 F.3d at 183. Because Oswald has received the DHO report, he has not shown prejudice due to the delay. The portion of ground one of Oswald's petition alleging a due process violation due to failure to timely receive his DHO report should be **DISMISSED**.

### C. Due Process – excessive sanction

To the extent Oswald is arguing the sanctions imposed by the DHO and respondent violate his due process rights, the claim must also fail. The Fifth Amendment to the United States Constitution guarantees, among other things, that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. CONST. amend. V, § 1. "[A] prisoner's liberty interests protected by the Fifth Amendment are those which were not taken away, expressly or by implication, in the original sentence to confinement." *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991). In *Sandin v. Conner*, the Court held that in order to show the deprivation of a liberty interest protected by the Due Process Clause, an inmate must show either that: (1) the conditions exceed the sentence imposed "in such an unexpected manner as to give rise to protection by the Due Process Clause," or (2) the confinement creates "an atypical and significant hardship . . . in relation to the ordinary incidents of prison life." 515 U.S. 472, 484 (1995). The denial of privileges falls within the scope of prison discipline "clearly contemplated" by an inmate's original sentence. *Jones v. Andrews*, No. 1:20cv251, 2020 WL 4809440, at *4 (E.D. Va. Aug. 18, 2020); *see also Gaston*, 946 F.2d at 343 (to manage prisons safely and efficiently, prison administrators maintain broad discretion over an inmate's "location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges"). Accordingly, Oswald's loss of privileges "does not rise to the level of an atypical and significant hardship in relation to the ordinary incidents of prison life and does not implicate due process concerns." *Jones*, 2020 WL 4809440, at *5. The portion of ground one asserting the sanctions imposed by the DHO and respondent violate Oswald's due process rights should be **DENIED**.

### D. Cruel and Unusual Punishment

For his refusal to take a drug test, Oswald was sanctioned with the loss of 41 days of GCT, a loss of commissary privileges, and encumbrance of his monetary account with a $6.00 monthly spending limit. ECF No. 10-2, at 17, 21. Oswald asserts the punishment he received "is draconian and certainly constitutes cruel and unusual punishment." ECF No. 1, at 11.

"In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements—that the deprivation of [a] basic human need was *objectively* sufficiently serious, and that *subjectively* the officials act[ed] with a sufficiently culpable state of mind." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (internal quotation marks and citations omitted). "[T]o demonstrate that a deprivation is extreme enough to satisfy the objective component of an Eighth Amendment claim, a prisoner must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Id.*

Oswald does not allege that he suffered any physical or emotion harm as a result of the sanctions. *See* ECF No. 1; *Baltas v. Clarke*, No. 7:20cv276, 2021 WL 1080516, at *24 (W.D. Va. Mar. 18, 2021) (holding that limitations placed on commissary spending "do not support an Eighth Amendment claim"). Accordingly, ground two, asserting Oswald's sanctions constituted cruel and unusual punishment, should be **DENIED**.

### III. <u>RECOMMENDATION</u>

For the foregoing reasons, the undersigned recommends that respondent's motion to dismiss as converted to a motion for summary judgment, ECF No. 9, be **GRANTED**, and Oswald's petition for a writ of habeas corpus, ECF No. 1, be **DISMISSED WITH PREJUDICE**.

## IV. REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.  Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.  A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

/s/
Robert J. Krask
United States Magistrate Judge

Robert J. Krask
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
April 19, 2021

## Clerk's Mailing Certificate

A copy of the foregoing was provided electronically to counsel for respondent and was mailed this date to:

Daniel A. Oswald, #26190-057
USP Yazoo City
P.O. Box 5000
Yazoo City, MS 39194

Fernando Galindo, Clerk

By /s/ J. L. Meyers
     Deputy Clerk

April __19__, 2021